IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CORTEZ DEVONTE JONES, <br> AIS #274811, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) CIVIL ACTION NO. 2:18-CV-1002-MHT-CSC <br> ) |
| BRANDON MACK, et al., | ) <br> ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Cortez Devonte Jones, an inmate incarcerated at the Donaldson Correctional Facility in Bessemer, Alabama, filed pro se this civil rights action under 42 U.S.C. § 1983 alleging certain violations of his federally protected rights while incarcerated in the Kilby Correctional Center in Montgomery, Alabama. Doc. 1. Plaintiff brings suits against the following three defendants: (1) Lieutenant Brandon Mack; (2) Sergeant Calvin Banks; and (3) Sergeant Terrance Myrick. *Id*. at 1; *see also* Doc. 25 at 1-2.[1] For relief, Plaintiff seeks monetary damages and requests the U.S. Marshal escort him to the magistrate's office in Montgomery County, so that he may file a criminal complaint against Defendants for Assault II. Doc. 1 at 4.

Pursuant to the Court's orders, Defendants Mack, Banks, and Myrick filed an answer, special report, supplemental special report, and supporting evidentiary material addressing Plaintiff's claims for relief. Doc. 25, 27. The Court subsequently informed Plaintiff that Defendants' special report, as supplemented, may, at any time, be treated as a motion for summary judgment, and the Court explained to Plaintiff the proper manner to respond to a motion for summary judgment. Doc. 28. Plaintiff filed his response to Defendants' special report. Docs. 37. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment is due to be GRANTED in part and DENIED in part.

**I. Standard**

To survive the properly supported motion for summary judgment submitted by Defendants,

---

[1] In their Answer and Special Report, Defendants Banks and Myrick clarify that they have been promoted to Lieutenant. *See* Doc. 25 at 2.

Plaintiff must produce some evidence supporting his constitutional claims. *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986). He must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984). Consequently, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987). Where all the evidentiary materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, the entry of summary judgment is proper. *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). "The leniency the Court must apply does not mean the normal summary judgment standard is discarded; nor can the Court accept factual averments completely unsupported by the record." *Jones v. Wal-Mart Assocs., Inc.*, No. 1:19-CV-03705-SDG, 2021 WL 243285, at *2 (N.D. Ga. Jan. 25, 2021) (citing *Nawab v. Unifund CCR Partners*, 553 F. App'x 856, 860 (11th Cir. 2013) ("Although a *pro se* complaint is entitled to a less strict interpretation, a *pro se* plaintiff is not excused from meeting the essential burden of establishing that there is a genuine issue as to a fact material to his case. When a nonmoving party's response consists of nothing more than conclusory allegations, summary judgment is not only proper but required.") (citation and punctuation omitted in original); *Nalls v. Coleman Low Fed. Inst.*, 307 F. App'x 296, 298 (11th Cir. 2009) ("[A] *pro se* litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."))

In this case, Plaintiff has established that there is a genuine issue as to a material fact to preclude summary judgment on his claims of excessive force and failure to protect.

## II.    Factual Background

By way of overview, Plaintiff commenced this pro se action for alleged violations of his federally protected constitutional rights while confined at Kilby Correctional Facility ("KCF"). Doc. 1. Plaintiff asserts, while locked in his cell, Defendant Mack sprayed his face with mace. Doc. 1 at 7. Plaintiff asserts Defendant Mack sprayed him with mace solely to punish Plaintiff for flooding his cell

the night before. *Id*. Plaintiff further asserts Defendants Mack and Banks then removed Plaintiff from the cell and assaulted him. *See generally*, *id*. Plaintiff contends Defendant Myrick had the opportunity to intervene in the assault, but that he chose to "stand by and watch." *Id*. at 9. Plaintiff asserts Defendants' use of excessive force and failure to protect, violated his Eighth Amendment rights. *See generally*, *id*.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

In March 2018, Plaintiff was transferred from Holman Correctional Facility to KCF. Doc. 27-1 at 3. On April 9, 2018, Plaintiff "was seen in the health care unit complaining of back pain. [Plaintiff] informed the nurse practitioner that he has a history of stab wounds in his upper back and had recently been kicked in the lower back." *Id*. at 3; *see also id*., at 12.

On April 18, 2018, at 11:55 a.m., Plaintiff was brought to the health care unit and a body chart was performed. *Id*. at 3; *see also id*., at 13. According to the body chart, under the "Inmate Statement" was the following assertion: "I was sprayed [because] I was kicking the damn cell door, and I threw water on [Defendant] Mack." *Id*. at 13. The chart also shows Plaintiff's eyes were cleaned, Plaintiff showed signs of superficial lacerations on his back, and lacerations were also noted on Plaintiff's left toe. *Id*. at 3; *see also id*., at 13. The Medical Director, Dr. Rahming was notified of the injuries. *Id*. at 3; *see also id*., at 14.

Pursuant to Defendant Mack's "Duty Officer Report," the following events took place on April 18, 2018:

> On 4/18/18, at approximately 12:00 PM, [Defendant] Mack was approached by Restrictive Housing inmate runners in the Restrictive Housing Unit Office, that [Plaintiff] was threatening to throw urine on them or anyone who passed his cell. [Defendants Mack and Banks] immediately went to cell E4.1A, where they observed [Plaintiff] kicking the cell bars and observed a cup in [Plaintiff's] hand. [Plaintiff] informed [Defendant Mack] to get away from his cell or he would throw urine on him. [Defendant Mack] instructed [Plaintiff] to put the cup down. [Plaintiff] failed to comply and threw a liquid substance on [Defendant Mack's] right shoulder and arm. [Plaintiff] picked up another cup and told [Defendant Mack] to go away from his cell. [Defendant Mack] unholstered his Sabre Red chemical agent, yelled 'gas', and sprayed a one to two second burst into [Plaintiff's] facial area. [Defendant Mack] instructed [Plaintiff] to turn around to be handcuffed. [Defendant Mack] placed one cuff on [Plaintiff's] right wrist. [Plaintiff] then tried to pull away and caused [Defendant Mack's] right thumb to hit the cell bars. [Defendant Mack] pulled [Plaintiff] back and [Defendant Banks] assisted [Defendant Mack] in placing cuffs on him. While [Plaintiff] was being escorted out of the cell, he kicked towards [Defendant Mack] with his right leg, kicking [Defendant Mack] on his right hand. [Defendant Mack] and [Defendant Banks] both grasped [Plaintiff] by both arms and took him face down to the floor. While on the floor, [Plaintiff] continued to resist by kicking his legs. [Defendant Mack] took his baton and administered a strike to [Plaintiff's] right common peroneal motor nerve.

3

> [Plaintiff] immediately ceased his resistive action. [Defendant Myrick] placed leg irons on [Plaintiff] and escorted him to P-Ward where he was examined by Nurse Michelle Rogers. Officer Jesse Betts took photographs of [Plaintiff]. At approximately 12:15 PM. [Defendant Mack] informed Captain Brenda King of the incident. [Defendant Mack] walked himself to P-Ward where he was examined by Nurse Rogers. [Defendant Mack] completed a First Report of injury and submitted it to Capt. King. [Plaintiff] was escorted back to Restrictive Housing for pending disciplinary action Threats, Disorderly conduct, Failure to obey a direct order of ADOC employee, and Assault on an Employee of the ADOC.

Doc. 25-1 at 4. According to the form titled "Authorization for Initial Treatment and Pharmacy," signed my Defendant Mack, the description of his "accident/injury" was: "Supervisor was attempting to gain control compliance on an unruly inmate when inmate kicked the Supervisor on the right hand, injuring thumb." *Id*. at 11. The diagnosis of Defendant Mack's injury was a sprained right thumb. *Id*. Defendant Mack completed a "Blood/Body Fluid Report Form," in which Defendant Mack asserted he was "splashed with possible urine." *Id*. at 18.

The April 18, 2018, Incident Report asserted the following narrative of the incident involving Plaintiff and Defendants:

> On 4/18/18, at approximately 12:00 PM, Restrictive Housing Unit runners John Harris B/224818 and Travis Woods B/200151 entered the Restrictive Housing Unit office and informed [Defendant Mack] that [Plaintiff], B/274811, assigned to cell E4-1A, was threatening to throw urine on them or anyone who passed his cell. [Defendants Mack and Banks] immediately went to cell E4-1A, where they observed [Plaintiff] kicking the cell bars and the edge of his bed. [Defendant Mack] instructed [Plaintiff] to cease his actions. [Plaintiff] then retrieved a cup and stated to [Defendant Mack], 'Get away from my cell or I will throw this piss on you'. [Defendant Mack] instructed [Plaintiff] to put the cup down. [Plaintiff] did not comply and stated, 'If you don't get away, I'm going to do it. Y'all gone get me some help'. [Defendant Mack] again instructed [Plaintiff] to put the cup down. [Plaintiff] did not comply and threw a liquid substance believed to be urine on [Defendant Mack's] right shoulder and right forearm. [Plaintiff] picked up another cup from the top of his sink and again stated to [Defendant Mack], 'Get away from my cell'. [Defendant Mack] unholstered his Sabre Red chemical agent, yelled. 'Gas', and sprayed a one-second burst of the chemical agent into [Plaintiff's] facial area. [Plaintiff] covered his face with his left hand and threw an unknown liquid substance believed to be urine towards [Defendant Mack] with his right hand. [Defendant Mack] evaded the liquid substance. [Defendant Mack] instructed [Plaintiff] to turn to the rear and place his wrists through the grill to be handcuffed. [Plaintiff] complied. [Defendant Mack] placed one handcuff on [Plaintiff's] right wrist. [Plaintiff] stated: 'That's fucked up that you sprayed me' and attempted to pull away from [Defendant Mack's] grip, causing [Defendant Mack's] right thumb to hit the cell bars [Defendant Mack] maintained his grip on the handcuffs and pulled [Plaintiff] back towards him. [Defendant Banks] instructed [Plaintiff] to place his left hand behind his back. [Plaintiff] complied and [Defendant Banks] assisted [Defendant Mack] in placing handcuffs on [Plaintiff's] left wrist when [Plaintiff's] cell door was opened, he turned

4

>around, stepped towards [Defendant Mack], and kicked towards [Defendant Mack] with his right leg, striking [Defendant Mack] on his right hand. [Defendants Mack and Banks] both grasped [Plaintiff],…by both arms and directed [Plaintiff] face down to the floor. While on the floor, [Plaintiff] continued to resist by rolling over on his back and kicking his legs to keep [Defendants Mack and Banks] from restraining his legs. [Defendant Mack] retrieved his baton and administered a back hand cutting strike to [Plaintiff's] right common peroneal motor nerve. [Plaintiff] immediately ceased his resistive action. [Defendants Mack and Banks] rolled [Plaintiff] over where [Defendant Mack] held [Plaintiff's] legs down. [Defendant Mack] radioed for [Defendant Myrick] to report to the area with legs irons. [Defendant Myrick] reported to the area and placed leg irons on [Plaintiff]. [Defendants Mack and Banks] assisted [Plaintiff] to his feet and placed him in the shower for decontamination purposes where he was given access to running water, soap, and circulating air. At approximately, 12: 10 PM, Officers Jesse Betts and Michael Freeman escorted [Plaintiff] to P-Ward Emergency Room where he was examined by Nurse Michelle Rogers. [Plaintiff] received a laceration between his left big toe and second toe as a result of kicking the cell bars or the edge of his bed. Officer Jesse Betts took photographs of inmate Jones. At approximately 12:15 PM, [Defendant Mack] informed Captain Brenda King of the incident. At approximately 12:30 PM, [Defendant Mack] walked himself to P-Ward where he was examined by Nurse Rogers. [Defendant Mack] received swelling to his right thumb as a result his thumb hitting the cell bars or from [Plaintiff] kicking it. Officer Betts took a photograph of [Defendant Mack's] thumb. [Defendant Mack] completed a First Report of injury and submitted it to Correctional Captain Brenda King. [Defendant Mack] elected to receive medical treatment through an SEICTF physician. [Plaintiff] was escorted back to Restrictive Housing Unit pending disciplinary action for Threats, Disorderly conduct, Failure to obey a direct order of ADOC employee, and Assault on an Employee of the ADOC. [Defendant Banks and Plaintiff] submitted written statements concerning the incident. [Defendant Mack] completed a Duty Officer Report and emailed the appropriate officials.

Doc. 25-1 at 23-24.

Also on April 18, Dr. Rahming provided Plaintiff with local anesthesia and sutured Plaintiff's first and second toe of his left foot. Doc. 27-1 at 3; *see also id*., at 15. The sutures were directed by Dr. Rahming, to remain in place for 7 to ten days. *Id*. at 3; *see also id*., at 15. That same day, x-rays were performed on Plaintiff's lumbar spine and left hip. *Id*. at 4; *see also id*., at 16-17. Pursuant to the radiology report regarding Plaintiff's lumbar spine, "[s]tudy demonstrates a normal alignment of the lumbar spine. No compression fractures. No evidence of spondylolisthesis. Normal vertebral body heights. Disc space narrowing is not identified. Normal SI joints. Intact posterior elements. Normal perivertebral soft tissues." *Id*. at 16. The report's "Impression" stated: "Normal lumbar spine." *Id*. Pursuant to the radiology report regarding Plaintiff's left hip: "No fracture, dislocation or subluxation. The joint space is uniform. Alignment is excellent. Bone density is normal and uniform. There is no degenerative or unusual arthropathy. The adjacent soft tissue claims are normal without

5

radiopaque foreign body." *Id*. at 17. The report's "Impression" stated: "normal left hip." *Id*.

The next day, Plaintiff was seen by a nurse practitioner. *Id*. at 4; *see also id*., at 18. "The nurse practitioner noted that [Plaintiff] was complaining of a one day history of extreme pain in his left foot injured the prior day after an altercation with correctional officers." *Id*. at 4; *see also id*., at 18. The nurse noted Plaintiff's wound would be monitored and Plaintiff's left foot would be x-rayed. *Id*. at 4-5; *see also id*., at 18. Also on April 19, Plaintiff executed the following written statement of Defendants' use of force:

> On April 18, 2018, I was inside my assigned Cell E-4 when I stated to [Defendant Mack] that I was having mental health issues and need to speak with the mental health staff about my problem. [Defendant Mack] stated fuck you and your mental health issues and the way you flooded this tier last nite [sic]. I should beat the shit out of you. I stated to him that I don't have time for that I just asking [sic] for medical health. He stated shut up and sit the fuck down or I'm coming inside to beat your ass. I was fearing for my life and by me seeing a lot of incidents with the officer and inmate in my prison term. I stood back to the sink. He stated I'll be back bitch. 2 [minutes] later he came back with the mase [sic] and sprayed me in the face and I went blind by the mase [sic] and couldn't see any more but heard [Defendant Mack] screaming to the cube officer Roll the goddamn door I'm bout to show this bitch. When the door roll he started wacking [sic] me with the stick in my back, the [Defendant Banks] switch me out and that's when [Defendant Mack] wack [sic] me in my arm. I fell and tried to block him from hitting me with the baton in my face and my leg up that's when he lift [sic] the baton in the air and Jack Hammer me in my left foot. I tried to run away from the [Defendant Mack] attacking me looking for help form the other officers standing around. I was pushed toward [Defendant Mack] by one of the officers and he hit me in my left elbow with the stick this time. I laid down on the ground stating I'm sorry [Lieutenant], I'm sorry. He stated fuck you bitch, I'll kill you bitch ass, that's when he spit on me twice coughing up cold in his throat and spitting on me. He dragged me to the supply closet and turn over the dirty mopp [sic] bucket on my head and stated 'You must don't know bout me, my name hold weight over the whole State of Alabama['] and spit on me again and push my face in the mop water that was on the floor, and stated stay yo pussy ass down there till I get ready, bout 5 minutes later Officer Betts came with Officer Freeman came and took me to the hospital where they examine me and stich [sic] my foot up. I was assaulted and abused and brutaly [sic] beating by [Defendant Mack] and fear for my life.

Doc. 25-1 at 21-22.

An x-ray was performed on Plaintiff's left foot on April 24, 2018. Doc. 27-1 at 5; *see also id*., at 23. According to the radiology report's findings: "views of the left foot demonstrate an acute, oblique fracture of the shaft of the fifth metatarsal. There are fractured dislocations of the heads of the second and third metatarsals, of indeterminate age. The soft tissues are normal with radiopaque foreign body. There is no plantar spur." *Id*. at 23. The "Impression" from this radiology report asserted: "1. Acute fracture of the shaft of the fifth metatarsal. 2. Fracture dislocations of the heads of the second

6

and third metatarsals, of indeterminate age." *Id*.

The following day, Plaintiff was transferred to Holman Correctional Facility ("HCF") (*id*. at 6) and had an inmate body chart performed. *Id*. at 25. In the area designated for "Inmate Statement" was the following assertion: "[Defendant] Mack [struck] my foot multiple times with a stick on 4-18 at Kilby Correctional Facility." *Id*. The nurse practitioner noted on Plaintiff's chart that "there were no signs or symptoms of distress…and that there was [sic] sutures to the left great toe and second toe with regard to a laceration of 2 centimeters by 0.5 centimeters." *Id*. at 5. The nurse also noted Plaintiff's foot was slightly swollen and that Plaintiff showed signs of a stab wound on the right side of his lower back. *Id*. at 5-6; *see also id*., at 25. On April 27, Plaintiff's sutures were removed. *Id*. at 30. Also on April 27, Plaintiff was seen by Dr. Pouparinas, the Medical Director at HCF. *Id*. at 6; *see also id*., at 32. Dr. Pouparinas noted Plaintiff's complaints of foot pain due to a recent fracture and noted Plaintiff received a cast, crutches, and pain medication to treat his foot injury. *Id*. at 6; *see also id*., at 32.

On April 30, an investigation surrounding the April 18 incident was completed in KCF and concluded: "[I]n the opinion of the Investigating Official that the use of force administered by [Defendant Mack] against [Plaintiff] was reasonable, necessary, and justified due to [Plaintiff] exemplifying physical resistance to several lawful commands given to him by [Defendant Mack] and other ADOC staff. [Plaintiff's] aggressive resistance by throwing a liquid substance on [Defendant Mack] and [Plaintiff] kicking and rolling on the floor refusing to stop his aggression. It is believed that the minimum amount of force was used on [Plaintiff]." Doc. 25-1 at 26.

On May 24, 2018, Plaintiff requested a back brace and a recast for his foot. Doc. 27-1 at 35. Approximately two weeks later, Plaintiff had another body chart performed, in which Plaintiff stated he was having suicidal thoughts. *Id*. at 36. The nurse noted on this chart that Plaintiff showed no signs or symptoms of trauma, and that Plaintiff denied any pain or injuries. *Id*. at 6-7; *see also id*., at 36.

On June 12, 2018, a physician assessed Plaintiff when Plaintiff presented himself to the clinic at HCF with pain in his left foot. *Id*. at 7; *see also id*., at 41. While the physician noted that Plaintiff was initially in a cast and was non-weight bearing, Plaintiff "has been walking on his foot and had removed the cast and was not using any crutches." *Id*. at 7; *see also id*., at 41. The physician indicated Plaintiff should follow-up as clinically indicated. *Id*. at 7; *see also id*., at 41.

A few months later, on August 31, Plaintiff was assessed by a nurse. *Id*. at 51. While the assessment is unclear as to which body part Plaintiff sought pain relief, Plaintiff asserts that the injury occurred in April 2018, that the injury was caused by being "hit with a stick," and that he suffers "crushing pain." *Id*. Ten days later, Plaintiff again sought treatment for his pain. *Id*. at 52. A nurse

assessed Plaintiff for toe pain and noted Plaintiff's injury occurred in April 2018 and was caused by a "metal stick." *Id*.

On September 24, Plaintiff was, again, seen by a nurse. *Id*. at 7; *see also id*., at 50. Plaintiff complained of foot and back pain and asserted that has suffered from this pain since April 18. *Id*. at 7; *see also id*., at 41. The nurse noted, while Plaintiff had crutches, he did not use them. *Id*. at 7; *see also id*., at 41. Approximately one week later, Plaintiff sought treatment for his toe pain, and again, asserted the injury occurred in April 2018, when he was hit with a metal stick. *Id*. at 53.

On October 11, Plaintiff received a second x-ray of his lumbar spine. *Id*. at 54. The radiology report results are identical to those of the April 18, 2018, x-ray. *Id*. at 54; *see also id*. at 16. Plaintiff continued to seek treatment for the pain in his foot and on November 29, 2018, filed the pending civil suit against Defendants. *See id*. at 56-58; *see also*, Doc. 1. Approximately two weeks after Plaintiff filed his civil complaint, while being assessed for pain in his foot, Plaintiff asserted his pain had been recurring since April and that the injury stemmed "from Kilby Officers." *Id*. at 58. Plaintiff was transferred from HCF to Donaldson Correctional Facility ("DCF") on December 19, 2018. *Id*. at 8.

The following year, in March 2019, Plaintiff sought treatment for his foot pain (*id*. at 60) and an x-ray was performed on Plaintiff's left foot. *Id*. at 61. According to the radiology report's findings: "Multiple views of the left foot demonstrate no fracture, dislocation, or subluxation. There is a fracture of the head of the second and third metatarsals. The age of the injuries is indeterminate. The soft tissues are normal without radiopaque foreign body. There is no plantar spur." *Id*. at 62. The "Impression" of the report stated: "Fractures of the head of the second and third metatarsals. Age indeterminate injury. Request clinical correlation." *Id*.

On March 16, 2019, Roy Roddam M.D., the Medical Director at DCF evaluated Plaintiff's left foot, reviewed the x-ray reports, and noted that the x-rays showed three previous fractures involving Plaintiff's left foot. *Id*. at 9; *see also id*., at 63. Dr. Roddam also noted that his examination of Plaintiff's left foot demonstrated no anatomical abnormalities. *Id*. at 9; *see also id*., at 63. The next month, Plaintiff saw Dr. Roddam for a follow-up. *Id*. at 9. In his report, Dr. Roddam noted that there was no evidence of injection, malalignment, swelling, or redness of Plaintiff's left foot. *Id*. at 67. The report further notes that Dr. Roddam could not account for Plaintiff's pain for an event that occurred one year prior. *Id*.

Additional facts are set forth as necessary.

### III. Discussion

In his complaint, Plaintiff asserts, Defendant Mack, unprovoked, sprayed Plaintiff with mace while Plaintiff was locked in his cell. Doc. 1 at 7. Plaintiff asserts Defendant Mack's actions were in

retaliation for Plaintiff flooding his cell the night before. *Id*. After being sprayed with mace, Defendant Mack opened Plaintiff's cell door and encouraged Defendant Banks to choke Plaintiff. *Id*. at 7-8. Plaintiff asserts Defendant Banks then threw him to the floor and proceeded to kick and stomp Plaintiff. *Id*. at 8. Defendant Mack, using a baton, then hit Plaintiff on his legs, feet, and middle torso. *Id*. Plaintiff maintains that Defendant Banks then roughly handcuffed him and dragged Plaintiff "down the tier." *Id*. at 8-9. After being dragged, Defendant Mack overturned a bucket of dirty mop water over Plaintiff's head, spit on Plaintiff, and forced Plaintiff to lay, face-down on the floor while other inmates walked over him. *Id*. at 8-9. Plaintiff maintains Defendant Myrick watched the assault and failed to intervene. *Id*. at 9. In his affidavit, Plaintiff asserts, as a result of the assault, he suffered a broken bone in his foot, fractured toes, a lower back injury, and "had an exposed tendon between [his] toes." Doc. 1-1. Plaintiff asserts Defendants' actions violated his federally protected rights. *See generally*, Doc. 1.

Defendants assert, *inter alia*, Plaintiff's allegations fail to state a claim and that they are entitled to immunity in their individual and official capacities. Doc. 25 at 3. Defendants' three affidavits are all in consonance with the description of events dictated in the April 18, 2018, Incident Report. *See* Docs. 25-1; 25-2; 25-3. Defendant Banks denies that he dragged, kicked, or stomped Plaintiff (Doc. 25-2 at 3), and Defendant Mack denies violating Plaintiff's constitutional rights. Doc. 25-1 at 3.

**A. Absolute Immunity**

The capacity in which Plaintiff brings suit against Defendants is not clear from the complaint. To the extent Plaintiff seeks to sue Defendants in their official capacity, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B. Excessive Force Claim
### (i) Qualified Immunity

With respect to Plaintiff's excessive force claim against Defendants in their individual capacity, Defendants argue, not only do Plaintiff's allegations fail to state a claim, but also, they are entitled to qualified immunity. "Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop [v. City of Atlanta*, 485 F.3d 1130, 1136-1137 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell [v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, 'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution.' *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Bowden v. Stokely*, 576 Fed. App'x 951, 954-955 (11th Cir. 2014) (per curiam). "While . . . there is no *per se* rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate. *See Skrtich [v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)]." *Bowden*, 576 Fed. App'x at 956.

Accordingly, the Court will consider whether Plaintiff's allegation that Defendants, without justification, sprayed Plaintiff with mace, choked Plaintiff, forced Plaintiff to lay face-down in dirty mop water, and kicked, stomped, and beat Plaintiff with a baton, which the Court must take as true for purposes of summary judgment, sets forth a violation of his Eighth Amendment rights.

### (ii) Excessive Force

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).

On April 18, 2018, following the incident in which Plaintiff was removed from his cell and eventually brought to medical, Plaintiff told medical personnel: "I was sprayed [because] I was kicking the damn cell door, and I threw water on [Defendant] Mack." Doc. 27-1 at 13. One day later, however,

Plaintiff asserted he was assaulted solely for flooding the tier the night before. Doc. 25-1 at 21-22. Plaintiff's medical records further demonstrate Plaintiff regularly sought medical treatment for the injury to his foot and, on numerous occasions, asserted the injury was caused in April 2018 by Kilby Correctional Staff, using a metal stick.

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. (internal quotations omitted). In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). The Court, however, further directed that "the relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. "When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 38 (internal quotations and citation omitted). Thus, in an excessive force case such as the one at hand, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 Fed. App'x at 953 (internal quotations and citation omitted).

Plaintiff's evidence reflects that on April 18, 2018, while housed in KCF, Plaintiff asked Defendant Mack for an opportunity to speak to a mental health nurse, but that Defendant Mack, in retaliation for Plaintiff's flooding the tier the night before, refused the request. Doc. 1-1 at 1. Plaintiff's evidence reflects Defendant Mack ordered Plaintiff to sit down in his cell and when Plaintiff refused, Defendant Mack sprayed him with mace. *Id*. at 1-2. After spraying Plaintiff, Defendant Mack encouraged Defendant Banks to pull Plaintiff out of the cell and choke Plaintiff. *Id*. at 2. Plaintiff's evidence further reflects that Defendant Banks threw Plaintiff to the ground and Defendants Banks and Mack proceeded to beat, hit, and stomp on Plaintiff. *Id*. Plaintiff's medical records further show Plaintiff continued to seek treatment for the injury to his foot, that he suffered fractures and lacerations to his foot, and that Plaintiff told medical staff that the injury was caused in April 2018 by KCF staff. *See generally*, Doc. 27-1.

Even though Defendants Mack and Banks dispute the version of events presented by Plaintiff, the Court is required at this stage of the proceedings to view the facts in the light most favorable to Plaintiff and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Correctional Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson v. Liberty Lobby*, 477 U.S. at 255 (all justifiable inferences are to drawn in favor of the party opposing summary judgment). In that vein, Plaintiff states, he was sprayed with mace without reason by Defendant Mack and then, while handcuffed, was kicked, stomped, spit upon, and hit with a metal stick to his leg, torso, and foot by Defendants Mack and Banks. Plaintiff's medical records evince he subsequently sought medical care and x-rays due to his pain. This version of the events could support an excessive force claim. *Bowden*, 576 Fed. App'x at 954.

While Defendants Mack and Banks deny every allegation asserted by Plaintiff, viewing the facts in the light most favorable to Plaintiff, the Court concludes Defendants are not entitled to qualified immunity as Plaintiff has alleged facts sufficient to survive Defendants' motion for summary judgment regarding Plaintiff's excessive force claim. *Skrtich*, 280 F.3d at 1301; *see also Rivera v. LeBron*, 824 F. App'x 838, 842 (11th Cir. 2020) ("[E]vidence that merely 'pit[s] the correctional officers' word against' an inmate's is distinct from the type of videotape evidence that…definitively established what happened and what did not.'") (citations omitted). Specifically, disputed issues of material fact exist regarding the need for the use of force, the nature of the force used, and whether Defendants acted "maliciously and sadistically" to cause harm. Consequently, the motion for summary judgment regarding Plaintiff's excessive force claim against Defendants Mack and Banks in their individual capacity is due to be denied.

### (iii) Failure to Protect

Next, Plaintiff asserts Defendant Myrick is liable for failing to intervene when he allegedly watched Defendants Mack and Banks assault Plaintiff and did nothing to stop them. "Even when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." *Ledlow v. Givens*, 500 Fed. App'x 910, 914 (11th Cir. 2012) (citing *Skrtich,* 280 F.3d at 1301). Specifically, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985). Thus, a corrections officer's failure to intervene in a beating can be the basis for liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and refused to do so. *Gruenwald v. Maddox*, 274 Fed. Appx. 667 (10th Cir. 2008). However, for liability to attach under section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene. *Smith v. Messinger*, 293 F.3d 641, 651 (3d Cir. 2002); *Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997).

However, for there to be a failure to intervene, it follows that "there must exist an underlying constitutional violation." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005); *Sanders v. City of Union Springs*, 207 Fed. Appx. 960, 965-66 (11th Cir. 2006); *Ford v. Fleming*, 229 F.3d 1163, 2000 WL 1346392 (10th Cir. Sept. 19, 2000) (unpublished op.) (holding that claims involving a failure to intervene were precluded by the jury's conclusion that no constitutional violations had taken place). Here, because there is genuine dispute as to whether there was an unconstitutional use of force, and, taking as true Plaintiff's sworn assertions that Defendant Myrick stood by and watched Defendants Banks and Mack assault Plaintiff, the motion for summary judgment regarding Plaintiff's excessive force claim against Defendant Myrick for his failure to protect, is due to be denied.

### IV. Conclusion

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 25) be GRANTED in part and DENIED in part as addressed herein.

2. Defendants' motion for summary judgment regarding Plaintiff's claims for monetary damages lodged against Defendants in their official capacity be GRANTED and these claims be DISMISSED with prejudice as Defendants are entitled to absolute immunity from such relief.

3. Defendants' motion for summary judgment regarding Plaintiff's claim of excessive force against Defendants Mack and Banks in their individual capacity be DENIED.

4. Defendants' motion for summary judgment regarding Plaintiff's claim of failure to protect lodged against Defendant Myrick in his individual capacity be DENIED.

5. This case be set for a bench trial on Plaintiff's excessive force and failure to protect claims against Defendants.

It is further

ORDERED that **on or before December 16, 2021,** the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 2nd day of December 2021.

/s/ Charles S. Coody
CHARLES S. COODY,
UNITED STATES MAGISTRATE JUDGE